UNITED STAES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSE A. SORTO, on behalf of himself and all others :
similarly situated, and JOSE A. SORTO RAMOS, HENRY :
ZELAYA, and ERIK RIOS, individually, : Case No.: 17 Civ. 5599 (JFB) (SIL)
:
                      Plaintiffs, :
     - against - :
:
LEGACY LANDSCAPING, INC. d/b/a LEGACY :
LANDSCAPING, AND GREGG FOWLER, :
:
                    Defendants. :
------------------------------------------------------------------------X

### DECLARATION OF MARIJANA MATURA IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF THE FLSA SETTLEMENT

I, Marijana Matura, declare as follows:

1. I am a partner at the firm of Shulman Kessler LLP ("SK") in Melville, New York, ("Plaintiffs' Counsel"). SK is a Long Island based firm that represents plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. I am admitted to practice before this Court and am a member in good standing of the bar of the State of New York. I am the lawyer responsible for prosecuting Plaintiffs' claims.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

4. I respectfully submit this declaration in support of the Plaintiffs' Motion for Approval of the Settlement and the following Exhibits:

- **Exhibit 1**: The Settlement Agreement (hereinafter, "Agreement"), and the Proposed Order and Stipulation of Dismissal with Prejudice is attached thereto as Exhibit B.

- **Exhibit 2**: SK's contemporaneous billing records;

- **Exhibit 3**: SK's summary of each attorneys' fee;

- **Exhibit 4**: SK's summary of costs; and

- **Exhibit 5**: Plaintiffs' Best-Case Scenario Calculations

**Background and Experience**

5. I graduated from Cornell University, School of Industrial and Labor Relations in 2005, and St. John's University School of Law in 2008, where I was an executive board member of the Moot Court Honor Society. While at law school, I also interned at the National Labor Relations Board where I investigated union members' complaints against their respective unions.

6. I was first employed as an associate at Missiano Shulman Capetola & Kessler LLP ("MSCK") starting in September 2008, and in March 2010, after MSCK disbanded, I continued to work for SK as a senior associate. In April 2017, I became a partner at SK.

7. During the nearly nine years I have worked at SK, I have exclusively represented Plaintiff in employment litigation and Title VII cases – focusing on wage and hour class/collective actions – and have successfully litigated and resolved cases as both supporting and lead Counsel.

8. I am licensed to practice law in the State of New York and the Southern and Eastern Districts of New York.

9. I am an active member of NELA/NY and the American Bar Association ("ABA").

10. My most recent speaking engagements have included the following:

- May 2015, I was a panelist at the NELA/NY Spring Conference regarding ethical solicitation of wage and hour clients.

- November 2016, I spoke at the ABA's 10th Annual Labor and Employment Law Conference in Chicago, Illinois, on a panel discussing independent contractors and contingent workers under the NLRA.

- May 2018, I spoke at the New York City Bar Association on a panel discussing the best practices for the hospitality industry.

- September 14, 2018, I was a trainer at "Mediation Advocacy Training" which was conducted in conjunction with the Eastern District of New York and the Federal Bar Association. As part of the all-day training session, I presented on the topic of "Overview of Employment Discrimination Law."

- September 29, 2018, I moderated a panel at the NELA/NY Fall Conference regarding establishing liability when faced with joint employment and/or independent contractor classifications under the FLSA.

- October 2018, I spoke at the New York State Bar Association's Labor and Employment Conference in Montreal, Canada, on a panel discussing "*Epic* Changes: Arbitration and Class Collective Action Waivers."

11. On April 5, 2016, I was honored by Hofstra University School of Law by the Hon. A. Gail Prudenti as one of Long Island's Top Women in Law for 2016.

12. Examples of cases in which SK was recently or is currently involved, include the following: *Nunes v. Rob-Glen Enterprises, Inc.*, 16 Civ. 6207, 2018 WL 3351798 (July 5, 2018) (approving a collective action settlement on behalf of 17 car wash laborers); *Cabrera v. A Squared Ventures Inc.*, 16 Civ. 6579 (E.D.N.Y. Jan. 2, 2018) (approving a collective action settlement on behalf of six car wash laborers); *Toomey v. Catholic Charities of Diocese of Rockville Centre*, No. 17 Civ. 2896 (E.D.N.Y. Dec. 28, 2017) (approving an FLSA settlement on behalf of eight teaching parents) *Savino v. Visiting Nurse Service of New York*, No. 15 Civ. 9451, 2017 WL 2473214 (S.D.N.Y. June 7, 2017) (approving an FLSA settlement on behalf of six community outreach coordinators); *Cruz v. Burger Brothers Restaurant Group, Inc.*, No. 14 Civ. 3186 (Mar. 28, 2017) (class action settlement approved on behalf of more than 250 assistant store managers); *Brackley v. Red Robin Gourmet Burgers, Inc.*, No. 16 Civ. 288, 2017

WL 838227 (E.D.N.Y. Mar. 2, 2017) (class action settlement preliminarily approved on behalf of over 2,400 servers employed in New York over a six-year period); *Robinson v. Big City Yonkers, Inc.*, Index No. 600159/2016, 2017 N.Y. Slip Op. 30177(U), 2017 WL 440568 (Sup. Ct. Jan. 17, 2017) (granting class and conditional collective certification of over 1,700 drivers classified as independent contractors); *Rodriguez v. Joseph Eletto Transfer, Inc.*, No. 5431/2016, 2016 WL 7365683 (Sup. Ct. Dec. 15, 2016) (class action settlement approved on behalf of approximately 80 delivery drivers); *Davis v. IMG Worldwide, LLC*, No. 15 Civ. 2157 (S.D.N.Y. Nov. 16, 2016) (class action settlement approved on behalf of approximately 85 Fashion Week workers); *Bijoux v. Amerigroup N.Y., LLC*, No. 14 Civ. 3891, 2016 WL 2839797 (E.D.N.Y. May 12, 2016) (class action settlement approved on behalf of approximately 250 marketing representatives); *Klein v. Weatherproofing Tech., Inc.*, No. 15 Civ. 4443 (E.D.N.Y. Jan. 29, 2016) (conditionally certifying collective of over 200 roofing technicians employed throughout New York State); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655 (E.D.N.Y. July 30, 2015) (class action settlement approved on behalf of approximately 2,500 assistant branch managers); *Sukhnandan v. Royal Health Care of Long Island*, No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) (matter on behalf of more than 400 marketing representatives approved as a class and collective action settlement); *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) (matter on behalf of approximately 1,500 marketing representatives certified as a class action and settlement approved); *Salomon v. Adderley Industries*, 847 F. Supp. 2d 561 (S.D.N.Y. 2012) (matter on behalf of approximately 400 cable technicians conditionally certified as a collective action); *Garcia v. Pancho Villa's of Huntington Village*, 678 F. Supp. 2d 89 (E.D.N.Y. 2010), *class certified b*y, 281 F.R.D. 100 (E.D.N.Y. 2011), *settlement approved b*y, 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012) (matter

on behalf of kitchen and wait-staff employees of Mexican restaurants conditionally certified as a collective action, then certified as a collective and class action and settlement approved); *Avila v. Northport Car Wash*, 774 F. Supp. 2d 450 (E.D.N.Y. 2011) (matter on behalf of car wash laborers conditionally certified as a collective action); *Moore v. Eagle Sanitation*, 276 F.R.D. 54 (E.D.N.Y. 2011) (matter on behalf of sanitation truck drivers conditionally certified as a collective action); *Cruz v. Lyn-Rog*, 754 F. Supp. 2d 521 (E.D.N.Y. 2010) (matter on behalf of car wash laborers conditionally certified as a collective action); *Pineda v. Jim-Mar Consultants*, 741 F. Supp. 2d 398 (E.D.N.Y. 2010) (matter on behalf of laborers in a granite and marble yard conditionally certified as a collective action), *modified*, 741 F. Supp. 2d 403; *Reyes v. Ted McCarthy Construction Design & Maintenance*, No. 10 Civ. 2378, 2010 WL 5508685 (E.D.N.Y. Dec. 8, 2010) (matter on behalf of landscaping and masonry laborers conditionally certified as a collective action); *Cano v. Four M. Food*, No. 08 Civ. 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) (matter on behalf of grocery store workers conditionally certified as a collective action).

*Madelyn Howarth*

13.     Madelyn Howarth has been employed as a bilingual (English and Spanish) paralegal at SK since November 2015. Ms. Howarth has been employed by numerous law firms as a paralegal since approximately 1994. Most recently, she was employed by Douglas M. Reda, Esq., from approximately 2005 through 2015.

*Kristine Jimenez*

14.     Kristine Jimenez is currently employed by SK as a bilingual (English and Spanish) paralegal. Ms. Jimenez started with SK in May 2018. In this role she regularly interviews potential and existing clients, translates for our English-speaking attorneys, and

handles administrative matters at the firm. Since approximately March 2015, Ms. Jimenez was employed by law firms as a paralegal. Most recently, she was employed by Donald Leo & Associates from approximately September 2017 through April 2018.

**Procedural History & Settlement**

15. On September 25, 2017, Plaintiffs Jose A. Sorto, on behalf of himself and all other similarly situated, and Jose A. Sorto Ramos, Henry Zelaya, and Erik Rios, individually filed a Complaint with this Court captioned *Sorto v. Legacy Landscaping, Inc.*, *et al.* The lawsuit alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* *See* ECF No. 1.

16. Defendants operated a landscaping business and Plaintiffs worked for them as laborers. Plaintiffs' alleged in their Complaint that they were denied overtime and minimum wage pay in violation of the FLSA and the New York Labor Law ("NYLL") as well as accurate wage statements and notices pursuant to the NYLL.

17. On February 9, 2018, Defendants' filed their Answer. ECF. 8.

18. On March 22, 2018, the Parties appeared for an initial conference before the Hon. Steven I. Locke, U.S.M.J.

19. The Parties engaged in discovery which consisted of the exchange of responses to interrogatories and document requests, including the production of daily calendars, GPS records and payroll history from 2011 through 2017, and NYLL pay notices. Plaintiffs' Counsel inputted these daily calendars into an excel worksheet, analyzed the documents against the GPS records and payroll records, met with Plaintiffs to review these records for accuracy, and based upon these records and Plaintiffs' allegations, created a spreadsheet to compute the approximate amount of damages owed.

20. Between July and November, counsel for the Parties had several back and forth negotiations based on the records produced and the damages spreadsheet. During the negotiations, Plaintiffs' conceded their minimum wage under both the FLSA and NYLL as well as their NYLL wage notice claim in the negotiations based on Defendants' document production which established that: (1) Plaintiffs were paid for all time worked, including the time spent at the yard at the start and end of the day; and (2) were provided with NYLL wage notices. Eventually the Parties agreed to a $45,000.00 settlement to be paid out over 2 installment payments. Specifically, the proposed settlement provides for an immediate payment of $10,000.00 and a final payment of $35,000.00.

21. The proposed settlement provides that each Plaintiff will receive a payment based his pro-rata share of the best-case scenario calculation which was calculated taking into account: the length of time he was employed, hours worked per day, and wages paid by Defendants.

**Risks of Continued Litigation**

22. The Agreement reflects a reasonable compromise of this matter.

23. The Settlement Amount represents approximately 50% of Plaintiffs' best-case scenario, which includes an allocation of 100% of liquidated damages. *See* **Exhibit 5** ("Plaintiffs' Best-Case Scenario Damages Calculation"). When removing the liquidated damages from the best-case scenario, the Settlement Amount represents approximately 80% of Plaintiffs' best-case scenario. *See Id.*

24. The 50% recovery of Plaintiffs' best-case scenario is appropriate when weighed against unresolved factual issues, including the potential work Plaintiffs' performed prior to leaving the yard and after returning to the yard and the amount of wages Plaintiffs received. In order to recover Plaintiffs' best-case scenario, Plaintiffs would need to attend their depositions

7

and the trial, consistently testify to working overtime, and establish that they are entitled to liquidated damages under the NYLL or FLSA.

25. It is likely that if litigation continued, the parties must complete up to potentially 5 depositions and ultimately summary judgment motion practice, and even if Plaintiffs were successful, a lengthy trial potentially followed by an appeal.

26. In order to reach a settlement that would fairly compensate all 4 Plaintiffs, Defendants need time to pay the settlement. Defendants have raised concerns about their ability to pay a settlement larger than the proposed settlement. These claims raised concerns with regards to Plaintiffs' ability to collect an award, even if Plaintiffs were ultimately meritorious on their claims. The availability of funds were a major point of discussion and debate during the settlement discussion. The settlement installment schedule is based off financial planning, which will permit the settlement to be paid in full and not require Defendants to close operation of Legacy Landscaping.

27. While I believe Plaintiffs have a reasonable likelihood of establishing Defendants' liability, the discovery, summary judgment motion practice, trial and appeals process are all uncertain, costly and lengthy.

28. It is respectfully submitted that the Settlement Agreement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all claims and survived an appeal.

**Approval of Attorneys' Fees**

29. Plaintiffs' Counsel's requested attorneys' fees are one-third of the gross settlement amount, or $14,862.70. The requested fees are reasonable, considering the time Plaintiffs' Counsel spent litigating and resolving these claims and the time Plaintiffs' Counsel will spend

administering the settlement, as set forth below.

30. The hours reported are reasonable and were compiled from contemporaneous time records maintained by my office. Attached as **Exhibit 2** is a true and accurate copy of SK's contemporaneous records.

31. Plaintiffs' Counsel has performed 92.86 hours of work from May 26, 2017 through December 10, 2018. *See* **Exhibits 2** and **3**. This does not take into consideration any time that will be spent administering the settlement payments.

32. Due to the experience of its attorneys in representing workers in litigation of this type, SK utilizes a small team of attorneys and support personnel to minimize duplication of efforts and maximize both efficiency and billing judgment.

33. Although much of Plaintiffs' Counsel's work is on a contingent or hybrid fee arrangement, Plaintiffs' Counsel does have hourly clients. For those clients, Plaintiffs' Counsel ordinarily and regularly bills clients at rates ranging from $375 to $475 per partner's hour, $125 to $325 per associate's hour, and $75 to $100 per hour for support staff.

34. Plaintiffs' Counsel is also seeking reimbursement of $407.36 for costs in this matter. This number also does not take into consideration the potential costs of administering the settlement payments. Attached as **Exhibit 4** is a true and accurate copy of SK's costs.

35. Plaintiffs' Counsel undertook this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of significant risk. Wage and hour cases of this type are, by their very nature, complicated and time-consuming. Due also to the contingent nature our fee arrangement, Plaintiffs' Counsel was prepared to and did make a substantial investment of time and financial resources with the very real possibility of an unsuccessful outcome and no fee of any kind.

36. Pursuant to the Agreement, Plaintiffs' counsel will receive $15,270.06 for fees and costs, $407.36 of which represents a reimbursement of disbursements. The fee requested by Plaintiffs' counsel is less than the lodestar, representing approximately 60% of the lodestar amount.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Affirmed this 19th day
of December, 2018

/s/ Marijana Matura
Marijana Matura

**SHULMAN KESSLER LLP**
Marijana Matura
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100

*Attorneys for Plaintiffs*